UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SCOTT WILLIAM DAVI,<br><br>Plaintiff,<br><br>vs.<br><br>DARRIN YOUNG, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; ACTING WARDEN DOUG CLARK, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN JESSICA COOK, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; MEDICAL DIRECTOR MARY CARPENTER, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; ASSOCIATE WARDEN TROY PONTO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND D-UNIT COORDINATOR ANGELA PECHOUS, IN HER INDIVIDUAL AND OFFICIAL CAPACITY,<br><br>Defendants. | 4:21-CV-04160-RAL<br><br><br>1915A SCREENING DISMISSING IN PART AND DIRECTING SERVICE IN PART |

Plaintiff Scott William Davi filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Davi leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc. 5. Davi timely paid his entire fee on October 8, 2021. Davi filed an amended complaint on October 21, 2021, in which he included Doug Clark as a named defendant and changed which of his Constitutional rights he claims were violated. Doc. 6. This Court grants Davi leave to amend his complaint. Thus, this Court's § 1915A screening focuses on Davi's amended complaint, Doc. 6.

**I.    1915A Screening**

A.    **Factual Allegations of Davi's Complaint**

Davi is an inmate at the South Dakota State Penitentiary. See doc. 6 at 1. He has suffered from right knee pain, including locking and popping in the knee, since 2014. Id. at 5. He claims that doctors told him he needed an MRI, but that Mary Carpenter, the medical director of the South Dakota Department of Corrections, refused to allow him to receive an MRI. Id. at 2, 5. He eventually received an MRI in 2018 that showed a bone-on-bone condition in his knee. Id. at 5. Davi was told to see a specialist, who recommended a full knee replacement. Id. Davi did not receive the full knee replacement surgery until 2019. Id. He claims that he had to suffer many years without pain medication and that if he had been treated earlier, he might not have needed a full knee replacement. Id. He also claims that he was recommended for regrowth shots, but the shots were denied. Id. According to a filing attached to his initial complaint, Davi only received eight physical therapy sessions instead of eighteen. Doc. 1-1 at 6. He was told by a prison nurse that he didn't need his wheelchair or ice, so his wheelchair was taken away. Id. He also wasn't allowed to have a cane. Id. He claims he was once stuffed into a transport van and that his Gabapentin was cut from 600 mg to 300 mg. Id.

Davi attempted to use the prison grievance process to address these issues. Doc. 6 at 6. He filed an informal resolution with Unit Coordinator Angela Pechous after his knee replacement on January 10, 2020. Id. at 13. Pechous yelled at him that he should be grateful because she paid for his surgery, that the prison owned him and could do whatever they wanted, and that they didn't need to follow the surgeon's recommendations, especially regarding narcotics. Id. at 6, 13. Davi told Pechous that maybe the courts should figure this out. Id. at 13. Davi then went to Deputy Warden Troy Ponto, who told him he would talk to Pechous. Id. at 14.

2

After answering Davi's informal resolution, Pechous would not let Davi file a formal resolution. Doc. 6 at 6.

Before his surgery, Davi had a job at the prison working with dogs from the Humane Society, and he returned to that job around February 3, 2020. Doc 1-1 at 14. He claims that he had been doing this job for five and a half years without any trouble until he went to Ponto about his troubles with Pechous. Id. at 12. Around April 10, 2020, he discovered that he had been paid just under half of the correct amount for his work in March. Id. at 14. He pointed this out to Pechous, who did not do anything about it. Id. Davi alleges that in early June, Pechous told a fellow prison officer, Officer Moore, that the dogs Davi had been working with were urinating in the shower. Id. at 15. Davi claims that Pechous told Moore not to warn Davi and instead to wait for Davi to allow the dogs to urinate in the shower so that she could write him up and take away his job. Id. Davi claims that he told Ponto about this, but nothing was done except for Moore losing his floor training job. Doc. 6 at 6-7. Another officer, Officer Brucher, then accused Davi of slamming a dog into the ground, but when Assistant Warden Cook and some other staff members reviewed the video, they found this was not true. Doc. 1-1 at 15. Davi later got written up by a different officer, Officer Knutson, because he asked to let a dog off the yard when it was 100 degrees out. Id. He was accused of failing to give the dog water, abusing the dogs, and using dogs to go where he wanted in the prison. Id. He claims that Knutson wrote that she would "go over and above her job" to get him fired. Id. When Davi spoke with Cook about Knutson's accusations, Cook said that there were no issues. Id. at 16.

Around August 13, 2020, Davi alleges that he was told by Pechous to leave a dog with Lint, a fellow inmate, when he went to therapy, but that he was written up for doing so. Id. He also was written up for not using a gentle lead with the dog, although he feels that was a

3

violation of humane society rules, not a posted prison rule or regulation. Id. About a week later, Davi tried to speak with Ponto and Warden Young about his issues with Pechous before he got in any further trouble that could result in him losing his job with the dogs or being transferred. Id. at 17. The humane society shut down the dog program in mid-September 2020, at which point Davi was given a job bleaching doors until the dogs returned. Id. Davi alleges that Pechous gave him certain work hours, then denied doing so and accused him of lying. Id. As a result, she did not pay him for the work hours given, only the ones she claimed she would have given him. Id. He then alleges that, around February 26, 2021, she reduced his hours and failed to tell him of a new job assignment doing laundry. Id. at 18.

On or around March 17, 2021, Davi was told that he was being transferred to "the Hill," a higher security facility at the prison. Id. at 18; Doc. 6 at 8. Although Davi acknowledges that his classification is such that the Hill may be an appropriate place for him to be housed, he claims there are many other inmates with the same classification who are not being moved there. Doc. 6 at 8. He specifically claims that other inmates at the Hill would be a threat to his safety because of their alleged involvement in a kidnapping plot against the family of former South Dakota governor Bill Janklow. Id. at 8-9.

Construing his complaint liberally, Davi brings several claims regarding these incidents. First, he alleges that defendants provided inadequate medical care in violation of the Eighth Amendment. Id. at 5. Second, he alleges that defendants would not allow him to file a formal grievance in violation of his Fourteenth Amendment right to due process. See id. at 6. Third, he alleges that defendants retaliated against him for filing grievances in violation of his First Amendment rights. Id. Fourth, he alleges that he was denied access to the courts in violation of his First Amendment rights. See id. at 8. Fifth, he alleges that he has been treated differently than

4

similarly situated inmates in violation of his equal protection rights under the Fourteenth Amendment. Id. Although he makes clear that his first claim is brought against Carpenter, Davi does not otherwise specify which claims are brought against which defendants. See id. at 2-3. He sues all defendants in their individual and official capacities. Id. Davi asks this Court to stop the retaliation by the Department of Corrections, return his job working with dogs, and stop his transfer to the Hill. Id. at 10. He also seeks $100,000 or anything the Court deems appropriate. Id.

**B.   Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (internal citation omitted); see

5

also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C. Exhaustion of Administrative Remedies

Normally, an inmate must exhaust available administrative remedies before suing under federal law. 42 U.S.C. § 1997e(a); East v. Minnehaha Cnty., 986 F.3d 816, 821 (8th Cir. 2021). But administrative remedies are not available when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." East, 986 F.3d at 821 (quoting Ross v. Blake, 578 U.S. 632, 644 (2016)). In East, the Eighth Circuit Court of Appeals determined that an inmate who has not exhausted administrative remedies must show that "a reasonable inmate of ordinary firmness would have failed to file a grievance in his situation." Id. Here, Davi appears to have exhausted administrative remedies on all his claims except the inadequate medical care claim. See doc. 6 at 5-6, 8; Doc. 1-1 at 1. He could not fully appeal his inadequate medical care claim because his formal resolution was filed late. See doc. 1-1 at 1, 34. But he alleges that he was late filing his formal resolution because Pechous would not allow him to do so. Doc. 6 at 6. Thus, assuming at this point Davi's well-pleaded allegations as true, a reasonable inmate of ordinary firmness would not have been able to file a grievance in such a situation, so Davi's failure to exhaust administrative remedies is excused for purposes of initial screening.

### D. Davi's Causes of Action

### 1. Official Capacity Claims

Davi brings claims against all defendants in their official capacity. Doc. 6 at 2-3. All defendants were employees of the South Dakota Department of Corrections at the time of the incidents in question. Id. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. See Pearson v. Callahan, 555 U.S. 223, 242-43 (2009). Here, Davi seeks both money damages and injunctive relief. Doc. 6 at 10. The State of South Dakota has not waived its sovereign immunity. Thus, to the extent that Davi seeks to hold defendants liable in their official capacities for money damages, the defendants are protected by sovereign immunity and are entitled to judgment as a matter of law.

Darin Young is no longer employed by the South Dakota Department of Corrections and can no longer be sued in his official capacity as the South Dakota State Penitentiary Warden. Davi seeks no injunctive relief for his claims of inadequate medical care. Thus, Davi's official capacity claims for injunctive relief against Young and Carpenter are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Inadequate Medical Care

Davi brings claims for failure to provide adequate medical care for his knee issues. Doc. 6 at 5. Construed liberally, this is a claim of deliberate indifference to serious medical needs in violation of Davi's Eighth Amendment rights. A "prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.' " Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. More specifically, a prisoner must allege "(1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (alteration in original) (quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). Davi alleges that he had severe knee pain, ultimately receiving a full knee replacement, and that medical professionals recognized that his knee required treatment. Doc. 6 at 5. Thus, Davi has alleged facts to support that he has serious medical needs.

Next, Davi must demonstrate that defendants were deliberately indifferent to that need. To demonstrate deliberate indifference, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly, 205 F.3d at 1096 (quoting Estate of Rosenberg, 56 F.3d

at 37). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) (citing Estelle, 429 U.S. at 104-05).

Davi alleges sufficient facts to state a claim for deliberate indifference against Carpenter. He claims that she would not let him receive an MRI when doctors said he needed one and that she would not let him see a specialist despite recommendations that he do so. Doc. 6 at 5. He also claims that his treatment following his surgery was inadequate, although he does not specifically allege that every inadequacy was due to Carpenter's deliberate indifference. See doc. 1-1 at 6-7. Although some of these claims may be mere disagreement with treatment decisions, the Court cannot conclude that Davi's claims against Carpenter are wholly without merit. Thus, Davi has stated a claim sufficient to survive § 1915A screening for deliberate indifference to serious medical needs against Carpenter in her individual capacity. He alleges no specific facts connecting any of the other defendants to his medical issues. See id.; Doc. 6 at 5. To the extent that Davi brings these claims against the other defendants, those claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Due Process

Construing his complaint liberally, Davi alleges that defendants violated his Fourteenth Amendment right to due process when they refused to allow him to file a formal grievance. See doc. 6 at 6. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (holding that a refusal to process grievances alone did not state a constitutional deprivation). "[A prison] grievance

procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Id. (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (explaining that, under Buckley, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983"). Here, Davi claims that defendants' refusal to give him forms to appeal his informal resolution is a constitutional violation, but those claims fail under Buckley. Davi's due process claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Retaliation

Davi alleges that prison staff have retaliated against him for filing grievances and talking about suing prison staff by refusing to allow him to file a formal resolution, lowering his pay, removing him from his prison job, and seeking to transfer him to a different housing area. Doc. 6 at 6-9; Doc. 1-1 at 11-18. "The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in [the Eighth Circuit] for more than twenty years." Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013) (citing Nelson v. Shuffman, 603 F.3d 439, 449-50 (8th Cir. 2010)). In order for Davi to allege a First Amendment retaliation claim, he must show that: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025,

1029 (8th Cir. 2007). Thus, taking Davi's allegations as true, the allegations clearly satisfy the first prong of a First Amendment retaliation claim.

For Davi to satisfy the second prong of a First Amendment retaliation claim, he must demonstrate not only that defendants took an adverse action against him, but also that defendants' alleged adverse action "would chill a person of ordinary firmness from continuing in the activity[.]" Spencer, 738 F.3d at 911 (quoting Revels, 382 F.3d at 876); see also Lewis, 486 F.3d at 1029 (holding in a First Amendment retaliation claim that the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." Santiago, 707 F.3d at 992 (quoting Garcia v. City of Trenton, 348 F.3d 726, 728 (8th Cir. 2003)). This is an objective test that looks at whether a reasonable prisoner's actions would be chilled by an official's alleged adverse actions. Id. (citing Garcia, 348 F.3d at 729).

Here, Davi has alleged sufficient facts to show that a reasonable prisoner of ordinary firmness would have been "chilled" from using the grievance procedure by Pechous if that prisoner were in Davi's position. As alleged by Davi, Pechous refused to allow Davi to file a formal grievance because he went over her head to Ponto. Doc. 6 at 6. Although not all of Davi's allegations regarding his job handling dogs rise to the level of retaliation, he alleges enough action on Pechous's part to show that she deliberately and repeatedly attempted to get him in trouble, reduce his pay, and remove him from his position. Id. at 6-9; Doc. 1-1 at 11-18. Thus, Davi has stated a claim sufficient to survive § 1915A screening for retaliation in violation of his First Amendment rights against Pechous in her individual capacity. Davi's claims for retaliation

against Pechous, Cook, Ponto, and Clark in their official capacities survive § 1915A screening to the extent they seek injunctive relief, as injunctive relief against those defendants could provide a remedy to Davi.

Davi claims that he brought Pechous's behavior to the attention of Cook, Ponto, and Young. Doc. 1-1 at 14-18. But he makes no allegation that these defendants took adverse action against him as required to state a claim for retaliation. He also makes no allegation that Carpenter or Clark was personally involved in the retaliation. To the extent that Davi brings these claims against the other defendants in their individual capacities, those claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5.    Access to the Courts

Davi alleges that defendants denied him access to the courts in violation of his First Amendment rights when they would not allow him to file a formal grievance. Doc. 6 at 8. To successfully plead a claim alleging a deprivation of a prisoner's access to the courts, a prisoner must establish that he or she suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). In access to the courts cases, a prisoner must prove an actual injury by showing "that a nonfrivoulous [sic] legal claim had been frustrated or was being impeded." White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (quoting Casey, 518 U.S. at 353). Here, Davi fails to show an actual injury. Although he alleges that he was unable to file a formal grievance, he does not show that any legal claims were frustrated or impeded from being brought to court. Thus, Davi's claims for violation of his right to access the courts are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6.    Equal Protection

12

Davi alleges that defendants violated his right to equal protection under the Fourteenth Amendment when they sought to transfer him to a higher security facility. See doc. 6 at 8. He claims that he was treated differently than similarly situated inmates who, despite having the same classification, were not transferred. Id. The equal protection clause of the Fourteenth Amendment requires the government to " 'treat similarly situated people alike,' a protection that applies to prison inmates." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004) (quoting Rouse v. Benton, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, Davi "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Id. (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). It is also an equal protection violation if "the different treatment is based upon . . . a suspect classification[.]" Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815-16 (8th Cir. 2008). "Suspect classifications include those such as race, alienage, gender, or national origin." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). Here, Davi fails to show that the different treatment burdens a fundamental right or that it is based upon a suspect classification.

Also, Davi's allegations do not support a class of one equal protection claim. A "class of one" equal protection claim was recognized by the United States Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam). The Eighth Circuit has applied the "class of one" analysis to a prison setting. Nolan v. Thompson, 521 F.3d 983, 989-90 (8th Cir. 2008). In Nolan, because the plaintiff had not alleged he was a member of a protected class or that his fundamental rights had been violated, the court found he had to show that defendants "systematically and 'intentionally treated [him] differently from others similarly situated and that

there is no rational basis for the difference in treatment.' " Id. at 989 (alteration in original) (quoting Olech, 528 U.S. at 564). The plaintiff had to "provide a specific and detailed account of the nature of the preferred treatment of the favored class[.]" Id. at 990 (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214-15 (10th Cir. 2004)). Although Davi asserts that other inmates that are similarly situated to him are being treated differently, he does not allege facts to show that the treatment was intentional or systematic. While Davi has arguably shown a pattern of treatment by Pechous, he alleges that this treatment is in retaliation for his filing a grievance and threatening a lawsuit, and he fails to allege facts that connect Pechous's retaliation to his housing transfer. Thus, Davi's equal protection claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

## II.  Order

Accordingly, it is

ORDERED that Davi's claims for deliberate indifference to serious medical needs against Mary Carpenter in her individual capacity and official capacity (only for injunctive relief) survive § 1915A screening. It is further

ORDERED that Davi's claims for retaliation against Angela Pechous in her individual capacity and official capacity (only for injunctive relief) survive § 1915A screening. It is further

ORDERED that Davi's claims for retaliation against Doug Clark, Troy Ponto, and Jessica Cook in their official capacities for injunctive relief survive § 1915A screening. It is further

ORDERED that Davi's remaining claims against the defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

14

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Form (Form USM-285) to Davi to complete for service upon defendants Carpenter, Pechous, Clark, Ponto, and Cook. It is further

ORDERED that Davi shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the amended complaint, Doc. 6, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is further

ORDERED that Davi will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

DATED November 3rd, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE